is number 23-2235 Arnold's Office Furniture LLC against Ian Borden at all. Miss Mince. Thank you, Your Honors. Good morning. May it please the court. Leigh Ann Mince on behalf of defendant appellants. I'd like to reserve three minutes for rebuttal.  Thank you very much. Your Honors, this case presents an opportunity for this court to police the boundaries of trade secret law and reinforce the essential characteristics of what is actually a trade secret that the trade secret is in fact secret and that it has some special economic value that cannot be derived from other sources. This case also presents an opportunity to consider whether a plaintiff can amend away previously alleged facts when those allegations no longer become convenient or persuasive for their case or as we argue here, should the defendants be allowed to impeach plaintiff's witnesses based on their own sworn claims based and the allegations that plaintiffs have tried to amend away. Beginning with the trade secrets claim, there are two fundamental problems with the jury's verdict here. First, the jury awarded Sunline over $250,000 in damages under a trade secret theory specifically when the testimony was unequivocal that Sunline had no trade secrets, that it was a name and a brand only. Second, neither Sunline nor Arnold's actually proved the existence of any trade secrets as that term is defined. Do we know if Sunline even existed as a veritable entity? I believe it did as an incorporated in some form. What was it? LLC? I believe it's an LLC. Okay. Yes, we issued you a notice asking whether you have waived your opposition on that point given the position that you took at trial and the testimony of your client and the precedent that we have in Robinson that suggests when you have lived by a particular theory of liability throughout the trial and then extended to jury instructions to incorporate that theory that you've waived the argument to take the opposite position on appeal. Sure. Obviously, we disagree that we waived that issue for two reasons. First of all, the fact that Mr. Borden claimed that he was an employee of Sunline does not necessarily mean Sunline had trade secrets. There's a difference between a company and a company that possesses trade secrets and it's entirely consistent for Mr. Borden to say I was working for a company that didn't have any trade secrets, but I was still an employee of that company. There are certainly companies out there who can operate without an owning or possessing any trade secrets. Could you concede that Arnold's had trade secrets? Well, I don't because I don't think they proved that they had trade secrets on this record, but I would agree that they had some but didn't prove it and Sunline never had any.  Okay. Well, tell us why. Was that because Sunline was in the PPE business and not the furniture business? Well, because frankly, Sunline's executives said they didn't have any trade secrets on the summary judgment record. They expressed- That's a legal conclusion. That's not dispositive. I mean, I think it is dispositive if the people- Do you think if someone testifies, I don't have a contract, that means they didn't have a contract even if there's a writing signed by both parties with consideration, etc., that it's a contract regardless of what they say or think, right? Well, I think in this case where it's a party who is claiming the trade secret, they are the ones asserting the trade secret claim and then they say, I don't have that. It would be odd in the world of a breach of contract claim, for example, for a plaintiff to say, to sue on breach of contract and then say, I never had a contract because you're essentially admitting you can't prevail. All right, well, tell us what they said that proves they don't have a- that Sunline didn't have a trade secret. Sure. In the summary judgment record, this is on page 837 in response to the Rule 54 statements of admissions or denial. It specifically says, Sunline USA, quote, neither developed nor possessed any trade secrets. So these arguments seem like they're terrific arguments in front of a jury, in front of the trier of fact, and you might be able to persuade a trier of fact based on those sorts of statements that it didn't exist except as a shell, that it didn't possess trade secrets, that that's even the position taken by its presumptive owner, but we're not in the position of making that determination. We're reviewing a jury verdict.  And so the question for us is whether there is anything in the record that would take it to the threshold of sufficient evidence for a rational jury to reach the conclusion that it did. Sure. So given your client's testimony and, you know, evidence that Sunline was operating and that it was putting its logo on products that were going out, why isn't that sufficient evidence for a jury to reach a different conclusion than it arguably could have reached based on the arguments you're now making? Sure. I think there's a few things. First of all, this court does have the responsibility to review sufficiency of the evidence issues. So it is fairly before the court, and we believe that on this record, there is not even the mere scintilla of evidence that could be required, that could be sufficient to uphold this jury verdict. What the district court pointed to and what my opposing counsel has pointed to was Mr. Gordon's testimony. He was a mere salesman. He thought he was working for Sunline. He testified that he thought he was selling for Sunline, but he didn't actually know. He was not privy to the corporate structure. That was something that he testified to. In fact, even the owners of Sunline and Arnold weren't entirely sure how the corporate structure all worked together. So for him to be the only person to say, I thought I was working for Sunline as an employee, and all of a sudden that morphs into Sunline is not only a company, an entity, but has trade secrets and possesses some kind of property, right? Mr. Gordon would have absolutely no idea what property is kind of within each corporate structure. It doesn't make any sense. It was the plaintiffs who had the burden to show that they actually had these trade secrets. But as you responded to Judge Hardiman, it was a separate corporation, right? Sure. And while you make the argument in your brief that it's not an owner, we have advanced fluid systems that sets out the rights of a mere possessor of trade secrets to bring a misappropriation claim. And that's under the state statute that we have in the case here, right? The Pennsylvania Uniform Trade Secret Act. So why isn't that enough, knowing that it's a separate corporation? And as a matter of law, it can state a claim for misappropriation of trade secrets that it was possessing with the permission, with the consent of the actual owner. Sure. I think there's two problems with that, Your Honor. Number one, that was not Sunline's theory. Unlike in the advanced fluid systems case, where the plaintiff their claim to standing based on this possessory interest. That was not their theory. Like I said, in summary judgment and at trial, they said we don't possess trade secrets. And in fact, when the jury was instructed, this is on page 1875 of the appendix, the instructions that the jury was given was also about ownership. There was no instruction on possession because there was no claim by Sunline that it was sufficient for it to assert a claim based on its possession. They went to trial. They chose to go to trial on an ownership theory while also saying Sunline had no trade secrets, possessed no trade secrets, owned no trade secrets. And then when the jury comes back and says Sunline actually has trade secrets and those trade secrets are worth $250,000. So doesn't that kind of cut against your argument, though, if the jury thought there had to be or was an even tighter connection and still gave the verdict finding that they were trade secrets that were violated? Because I feel like sometimes in your argument, you're conflating and switching between evidence, which is a factual issue, which my colleague asked about, which would just be a mere scintilla of evidence versus just the legal understanding. So is your argument really just that there was a problem because the jury didn't have the correct legal understanding of the verdict that it was reaching? Because they certainly thought there was evidence to prove something even more than what was necessary. I can't speak to what the jury specifically was thinking when it filled out this form. I think under the sufficiency of the evidence standard that this court has in front of it, when all the testimony from the plaintiffs is that we don't have trade secrets, whether that's a legal conclusion because they are essentially waiving or forfeiting a claim by Sunline or whether it's a factual matter where they're the only ones who would have any knowledge about what is in the corporate structure of Sunline versus what is in the corporate structure of Arnold's, the only conclusion in my mind that the jury should have reached is that Sunline did not have any trade secrets and they reached the opposite conclusion and awarded an additional $250,000 plus. And of course, as an important institution in our judicial system, jury's verdict gets significant deference. So we're just going to need to hear, I think, more about how definitive your argument is that there was really an absence of any evidence to support that. Sure. Well, I think we've laid out a lot of the testimony in our briefs, but among other things, Mr. Jordan Berkowitz testified repeatedly that all trade secrets are under Arnold's name. That's 883 of the record. He said at least three different times that Sunline is just a name. It's not an entity. Everything falls. It's not a real company that's operating in a traditional sense. It's just a name. It's just a brand. Jay Berkowitz, the other co-owner of these companies, again said everything falls under Arnold's and that Sunline is just a brand. And the only testimony that they pointed to from my client is saying, I thought I was selling for Sunline. There was no definition given to the jury of ownership, right? Correct. But there was a statement that in order to find trade secrets, you have to find that the plaintiff owned trade secrets. And that was part of the jury instructions because I believe it's part of the standard Defend Trade Secrets Act. And the Defend Trade Secrets Act does have a definition of ownership. It does. Yes. Right. And that includes not only a legal title, but also equitable title and an entity in whom the license has been given. Sure. And again, that was just never the theory that the plaintiffs here advanced because they were the ones who repeatedly said Sunline doesn't possess any trade secrets. So sure, could they have advanced that theory? Sure. And maybe we wouldn't have this argument here today, but they chose not to use that theory. They chose not to go to the jury on a possession type theory. They just chose to say we don't have trade secrets. Yet, when the judge asked, shouldn't Sunline be dismissed from this case on the affirmative claims? We said yes. They have admitted they don't have trade secrets. Therefore, they shouldn't be here on their trade secret claim. The plaintiff said no, they have to stay in the case because of the cross claims or counterclaims. Excuse me. So this confusion, I understand that the attempt is to point to us for creating the confusion. We were trying to alleviate it in response to the show cause order. But ultimately, the plaintiffs chose to go to trial with both plaintiffs in the case that they had originally sued on and yet say repeatedly that Sunline doesn't have any trade secrets. So I think if this is the rare case where you have a verdict that doesn't meet the sufficiency of the evidence standard. I just want to make sure exactly what's at issue because you've been so focused on Sunline. We've got a verdict of $1,053,016. What exactly are you challenging? Sure. Well, we have challenged on a judgment as a matter of law basis, the two We are not challenging the breach of contract and breach of fiduciary duty claims on a theory of judgment as a matter of law. We have asked for a new trial in total based on the evidentiary issue with this restrictive covenant that was originally introduced into the case by the plaintiffs. They then amended their complaint and then claimed that this document that they had claimed was real and part of the and authentic could no longer be used to impeach them because they had amended their complaint and effectively wiped it away. So that on that basis, we're challenging the entire verdict and are arguing that we are entitled to a new trial. But on a judgment of the matter of law, we are only focused on the trade secrets. All right. And before you sit down, let me give you a chance to assume for a minute that we disagree with you that there were trade secrets there. Tell us why the trade secrets privilege or protection was lost because of public disclosure. I thought, frankly, I thought that was your stronger argument. I thought you were going to lead with, yes, customer lists, sales records, prospect lists, all of this stuff that businesses engage in in sales are trade secrets. There are things that you don't want your competitors or other people to have. You guard them jealously. But I read your briefs to say that's all true, but they were disclosing this stuff all over the place. So whatever protection they would have had, they lost. Did I misread your briefs on that? Not at all, Your Honor. And I was going in the order of the document, but first of all, I think you're correct on info kits and price lists. These documents were being sent to all kinds of prospective customers through email blasts, through the website. They were placed, the info kits in particular were being used as a brochure for marketing purposes. And this Court has never said that just because you spend a lot of time developing marketing materials that you are then putting into the outside world without any protections of confidentiality, any assumption of confidentiality, that that creates a trade secret. All right. If we agree with you on that, on some of these, like the all states list and the things that Pfister obtained from a prior colleague and the Zoom info lists, there's certainly a public aspect to those, I think. But what about things like Salesforce and QuickBooks and QuickBase? Well, those aren't part of the alleged trade secret that he took. The allegations was that he took names of customers. And there's a small handful of customers that maybe would have been original furniture sales purchases, but when they switched to PPE, what Mr. Jordan Berkowitz said was forget everything you know about furniture. We're entering this new business. And therefore, anything that they had in their QuickBooks or any knowledge that they had about, for example, furniture sales that a client had previously purchased is frankly irrelevant. It doesn't matter how many desks they purchased when you're selling PPE. So they were entering this. But if there were a small cadre of furniture purchases who also purchased PPE, that would matter with respect to those few, wouldn't it? It would not matter in terms of trade secret protection, because at that point, all you're protecting would be the name of a customer. And that is at the extreme periphery of trade secrets law when there's not something that has value in addition to just the pure name of the customer. But wasn't their theory, I thought the whole idea of the compilation of information, the customer list compilation here, was based on testimony that in things like QuickBooks, QuickBase, the Salesforce, where they had aggregated not only the names of the customers, but also their purchase history, including PPE on an ongoing basis, which products they had purchased, what prices they had purchased, right? Isn't it that compilation that is the trade secret at issue when we're using the shorthand here of customer list? Well, I think it's how they define it is much broader than that. They did not limit their trade secret theory to just even a compilation in QuickBooks or any other software. They said everything under the sun that has any potential customer is a customer list and therefore is a compilation of the trade secret. So they didn't claim just that kind of proprietary information. They claimed the thousands and thousands of names from Zoom info, from the Allstates list. I'm sorry to interrupt, but the Zoom info, the Allstates list, we're talking about, those are the sources from which some of them are public, from which they got names to begin with, but their theory and their testimony seems to be about his downloading of information from the proprietary databases that they created aggregating those names with other data. So am I misunderstanding what the issue, the trade secret was at trial? I think they chose to go on a much, to trial on a much broader trade secret and that's created the problem where they can't claim trade secret. So if they had gone to trial just in the way my colleague articulates the issue, trade secret? Could be, then we might have an issue with use as well because there wasn't very much, there was very little overlap in customers that were on, that were existing. That would have severely reduced the damage. Correct. It would have. It would have been a totally different case than when you're talking about hundreds of thousands of names that they were claiming they had some kind of proprietary or trade secret interest in when most of them, the vast, vast majority were downloaded from the Internet. Can I just ask one other question? Say, following up on Judge Hardin's question, let's assume for a moment that we were to conclude that you're right as to some of the trade secrets and we have three different buckets here of trade secrets, alleged trade secrets, right? So let's say some of them we conclude, maybe the info kits, price lists, not protected, but customer lists are. In that circumstance, do we uphold the verdict? I think in that circumstance, the result would be a new trial on damages on this issue. That was a case, there was a situation that was addressed by the Federal Circuit in a very similar case. I can give you the citation for that. It is Texas Advanced Optoelectronics Solutions versus Renesas Electronics America. It's 895F3-1304, Federal Circuit 2018. And that was a very similar case. The plaintiffs there had gone to trial on multiple different trade secret theories. On appeal, the Federal Circuit said some of these are trade secrets, some of these are not trade secrets. Therefore, I'm remanding for a new trial based on damages only for the trade secrets that the plaintiff managed to prove. But you didn't raise the multiple theory doctrine in your motion for judgment as a matter of law or motion for new trial. That's correct. We did not. And it's not raised in your opening brief? That's correct. And in the responsive brief, Arnold's footnote 4 says the jury was not asked to decide which of the appellees claimed trade secrets merited trade protection as such. Thus, even if only one of the claimed trade secrets passes appellate scrutiny, the verdict should be affirmed. And you don't respond to that in the reply brief, right? That's correct. So I... Why isn't it waived? Well, I think just in response to your question, that would be the proper remedy. I admit that we did not ask for that specifically. We did generally ask for a new trial, and I think it could be under this court's discretion when fashioning a remedy. If the court does choose to pick and choose among the trade secrets, that could be something this court could do in its equitable authority. But I admit we have not specifically asked for that relief. All right. Thank you. We'll hear you on rebuttal. Thank you. Good morning, Your Honors. May it please the court. I'm Douglas Smiley from Fitzpatrick-Lunsenboob, and I represent the appellees Arnold's Furniture Company and Sunline USA LLC. To clarify one point, Sunline USA LLC is in fact an entity. It's an LLC, and Mr. Jay Berkowitz testified at trial that it was a wholly-owned subsidiary of Arnold's. I'd like to begin by addressing, if I may, first the questions that the court posed by its order prior to oral argument about the waiver questions, and particularly the Robinson case. And I know Judge Krause asked about this of my opponent. I think the legal precept was actually pretty well set forth by Shakespeare in Hamlet, where Hamlet said, let it work for to sport to have the engineer hoist on his own petard. What that quote means is that it's sport to see an argument backfire on the person who advocated it. And the argument advanced in this case by the defendants below was that Sunline was a separate entity that employed Mr. Borden. He wanted that because he didn't have a non-compete with Sunline. He wanted that because he didn't have a non-compete with Sunline and because he wanted to assert a wage payment collection claim against Sunline. And every time I asked him about trade secrets of Arnold's or employment with Arnold's at trial, he responded and Sunline. And the jury heard that repeatedly. And then in closing argument, his attorney started off by saying, what's Sunline got to do with it? And he went on for a lengthy paragraph describing reasons why Sunline should be in the case. On appeal, they cannot be heard to say that it was error for the jury to find, based upon the evidence that they heard, that Sunline had trade secrets just like Arnold's had trade secrets and that Mr. Borden misappropriated those trade secrets. Why isn't the petard for the goose just as good for the ender? I mean, here, your client, through multiple witnesses, took the position that Sunline did not, in fact, put in its answers in request to admissions that Sunline did not own or possess any trade secrets or proprietary information. Why isn't that dispositive? Because ultimately the question went to the jury. But when we're deciding whether a rational jury could reach this conclusion, and there are the most authoritative witnesses saying repeatedly that this entity did not even possess proprietary information or trade secrets, how could a rational jury conclude otherwise? Because they heard conflicting testimony from the other side. They heard conflicting testimony that Sunline was in the PPE business, that Sunline had PPE customers, that customer lists that were developed by whoever the entity was, were to sell PPE under the Sunline brand. It doesn't mean they're trade secrets, though. No, different question. It means he was selling for Arnold's and Sunline, right? And he was selling on his own account, which is what caused the trouble here. The record shows that he was selling product and that all the sales went through Arnold's. Sunline was an entity that was formed to be the brand under which they sold PPE. Well, see, that's now, this is where the squirrely part comes from your side. I mean, is there some tax play here? I mean, what's going on here? You know, I mean, this should have been a lot clearer, right? I mean, there was a lot of testimony that this was Arnold's, Arnold's, Arnold's for me. For your side, not Sunline. Oh, Sunline's just a brand. Oh, yeah. What is it? Well, now you tell us it's a wholly owned subsidiary. I guess he testified it was a wholly owned subsidiary.  But that wasn't pellucid in the record. There was, it was litigated so strangely. Would you at least concede that? From the perspective of the plaintiffs below, my clients, we tried to litigate this to be as clear as we could on what we understood the facts to be, what the facts were as known by us, and that there are two entities, Arnold's Furniture Company that originally hired Mr. Borden and Sunline USA LLC that was formed at a later date for the purpose of being the brand under which they sold PPE, personal protective equipment. The fact of the matter is, legally speaking, what probably would have worked was to create a trade name, a fictitious name, and register it as a DBA for Arnold's. But the way they went about it was to create a little confusion between the two entities. But the confusion doesn't mean that Mr. Borden was actually employed by Sunline, from whom he never received a paycheck, but the jury heard conflicting testimony. The jury was properly instructed. The jury came to a verdict based upon the evidence they heard. All right. Well, what exactly was the information that Sunline owned that constituted trade secrets? Sunline owned what Arnold's owned, because Sunline was an Arnold's entity. It sounds like Sunline was the parent company. You said Arnold was the parent company. No. How could Sunline own everything that Arnold's owned if Sunline was the subsidiary? In terms of PPE trade secrets, Arnold's, as the parent company, was entitled to share that information with its subsidiary through which it was going to sell PPE. But that doesn't transfer ownership, does it? No, but they have the right to license it. They have the right to share it. But wasn't the jury instructed here as to ownership? The jury was instructed, yes, under the ownership definition. So what is the evidence from which a rational jury could conclude that Sunline owned the trade secrets that you've put forward? Because joint ownership isn't mutually exclusive. In other words, there doesn't have to be a single owner. That's true, but joint ownership shouldn't result in duplicative verdicts. I think it's a split verdict based upon the verdict sheet. They awarded 50% of the trade secret verdict to Arnold and 50% of the trade secret verdict to Sunline. And by the same token, they awarded an equal percentage or an equal dollar amount for breach of fiduciary duty of loyalty and an equal amount for breach of post-restrictive covenant. Quite a coincidence. I mean, is it a compromise verdict? Was that your best explanation or a reverse engineered verdict that they came up with the million dollars and then split it four ways? To me, it looks like that, but we can't get into the jurors heads as to what they intended. They intended to award a million dollars. If we said to you Sunline really didn't deserve the quarter million, your answer is, well, Arnold's deserved half a million and if the jury decided to split it in two, then there's nothing we can do about it at this point. I believe that's correct. And I believe that's correct because of the conflicting evidence that the jury heard, they agreed upon. There's nothing inequitable about it because Borden was saying Sunline over and over again. Yeah, and they're actually, I don't know that this sheds most light on it from the court's perspective, but there was a colloquy that occurred on the charging conference about whether both entities should be on the verdict slip as plaintiffs and it's at page 11, 1736 through A, 1746 where we discussed with the court why we would have both entities on the verdict slip and it was agreed to by both sides and part of it was because of the counterclaims and part of it was because it was a theory advanced by the defense and in order to have a protective claim for Sunline, we had them as, they were a plaintiff, so they had a claim in the case. And the total damages there were justified. Just give us your best argument because you're basically saying it doesn't matter how they split it up, but obviously the total would have to reflect reality. Well, there was one specific instance in the case where we took the customers that were customers that Mr. Arnold, some of them were on lists, some of them were provided to him, some of them were prior furniture customers, and we went through that on cross-examination to enumerate each customer and sales that they had and it totaled over a million dollars. It was about a million seventy-six thousand as I recall. So then the following argument from your standpoint is that so long as both entities actually have like possessory or ownership of the customer list and trade secret, it's kind of irrelevant what the division of. I think that's absolutely correct. And I think, you know, from a juror's perspective, we're, as opposed to the judge's perspective, we're splitting hairs to talk about a possessory interest versus an ownership interest when Arnold's as the owner had the right to share it with its subsidiary. And that's who Mr. Borden testified he was selling for in the PPE world. If the court would please, I would like to address briefly this restrictive covenant argument. Could you talk to us about the particular buckets of trade secrets here? Yes. And let me just start out with like, what's the consequence if we were to conclude that some, one is valid, others are not? As protected trade secrets, you put in this footnote that even if one of the claim trade secrets passes appellate scrutiny, the verdict should be affirmed. There's no citations. There's no authority. What are you basing that on? Basing that, Your Honor, on the fact that the jury was instructed at the conclusion of seven days of trial as to the elements of a trade secret. Agreed upon jury instructions. The jury heard those instructions and came back with a verdict. On appeal, the appellant has tried to disprove that as a matter of law, any of the approved trade secrets should actually qualify for trade secret protection, but that wasn't preserved by them below. They didn't ask that the jury be separately interrogated as to which claims gave rise to which portion of the verdict. They were, the question is, do you find that, you know, Arnold's possessed trade secrets? Do you find that Sunline possessed trade secrets or that the defendants misappropriated trade secrets? And the jury said yes, based on the evidence they heard. Now, I could get into a lot more detail on each of the buckets if you would like. But neither did your client ask for a special interrogatory from the jury so that it would be clear that at least which of the trade secrets it was, if some of them were found not to be protected, so that there would be a continuing valid basis for the verdict. So what do we do if we conclude that we can't tell which of the theories it is and we conclude that some of these are not protected? Or it could be that the jury found that all of them were trade secrets before this court looks at it again as a matter of law, but they're part and parcel of the same thing because they're also interrelated. You take my customer, you sell my customer my product using my information, offering prices based upon internal pricing strategies. That's all one act, but it comprises misappropriation of multiple potential elements of trade secrets. But the claim isn't tortious interference with contract. The claim is misappropriation of particular trade secrets. Yes. And there were three categories of trade secrets, distinct categories that were argued throughout trial. Yes. So under the multiple theories doctrine, if a case comes to us on appeal and there were different theories of liability they put forward to a jury, if we conclude one isn't valid, we can't tell because there wasn't a special verdict from the jury which theory they rested their verdict on. Don't we have to remand for a new trial? I don't believe so because the verdict slip was agreed on by the parties. The instructions were agreed upon the parties. There was no reservation of an argument that this should be parsed out in small increments to determine whether some are some elements of the claim are or are not trade secrets. This was a case where the jury heard detailed testimony about each of the three classes of trade secrets I were talking about and came back with a verdict. I don't think you can parse it out because they sold the evidence was that every customer that Mr. and Arnold's or Sunline customer list. Some of them are customers that bought furniture. Others were names that were provided to him and his job was the prospect for sales. How could he not use information that he had in his mind? That was Arnold's information that was confidential related to what the customers needs might be, who the customer contact was, what the product specifications were, how a specific product fit into a specific niche or need of a potential customer. So are you arguing and not to put words in your mouth and just trying to understand the nature of your argument now because it sounds like you're saying they necessarily reached a conclusion as to the customer list and that if we were to customer list were protected that any error in terms of the other two categories being put in front of the jury would be harmless error. Is that what you're arguing? Well, yes, because the customers tied directly to the customer list that were provided. The information that was available because this was a sales job was utilized to close deals with those customers. But I do think if the jury should not have been allowed to decide, for example, whether the info kits were or were not trade secrets, that wouldn't warrant reversal of the trial. Again, there was no reservation or preservation of that argument below. The argument below was, you know, no, I didn't. Failing that, they're not trade secrets. Failing that, your company doesn't have the right to claim them as their trade secrets. So the jury heard all that and they reached a verdict based upon a lengthy trial and lots of evidence. Speaking of what the jury heard, did you present evidence to the jury that Borden used the information on Salesforce, QuickBooks, or QuickBase? Yes. You didn't mention any of those in your brief. No. I mentioned the customers that he had sold to and we are focusing on the sources of those customers, which were from Arnold's, and the record at trial demonstrated that. All right. Thank you very much, Mr. Smiley. Rebuttal, Ms. Ritz? Thank you, Your Honors. Thank you, Your Honors. I think going off of the previous question that you just asked, Judge Hardiman, the focus at trial on this customer list wasn't the proprietary information about the needs of the customers, repeat sales. This was a brand new business for them. It was PPE. They were calling, prospecting, trying to sell something they had never done before. So what the trade secret that the plaintiffs really were claiming here was the pure names. It wasn't this records of sales history that Mr. Borden somehow could have used to try to find, to tailor his sales pitch in any particular way. But he took a lot more than just a bunch of names, right? It was names, titles, locations. Sales history. Sales history to a very limited extent on furniture. And if he, once this pivot is made to PPE by Arnold's, if he goes off and opens Borden Group and uses what he has in his head of all of those relationships that he built over the years to sell PPE to those people, we don't have a problem, right? Correct. The problem is that he took a lot of documents with a lot of very detailed information that was owned by Arnold's and perhaps Sunline, right? Yes, but the detailed information that was provided for the vast, vast majority of these customers and really prospective customers, because they weren't even yet Arnold's customers, was not the type of information that this court has ever protected or any court has really protected. Well, but when he was still in their employ, they were in the PPE business. They had recently entered the PPE business, right? And he was supposed to be selling PPE on behalf of his employer, right? That's correct. And he was selling separately on his own to different clients. And then when he left, there was some overlap. And that's why you're not challenging the breach of duty of loyalty, etc. That's obvious. Correct. But that's different than stealing trade secrets. Yes, and that's largely our point is when you're alleging a trade secret claim, trade secrets mean something special under the law. It's not just- All right. Well, what if we agree with you that Sunline didn't have trade secrets, that all the trade secrets were Arnold's? What's your response to Mr. Smiley's argument that if Arnold suffered half a million dollars in trade secret damages, the jury was allowed or permitted to split that half and half with Arnold's and Sunline based upon the way, the peculiar way the case was litigated? Sure. Well, I think to Mr. Smiley's point, we specifically wanted both names on the verdict sheet so that we could figure out what the jury was thinking and why, how much was attributable to Arnold and how much was attributable to Sunline, specifically so that we could preserve this issue if Sunline came back with a verdict. So I think under those circumstances, either you find for judgment of matter of law, find that judgment should have been entered in defendant's favor on Sunline's claim and therefore wipe out the $255,000 award for Sunline and the fact that plaintiffs kept Sunline in the case and maybe would have produced those damages. We don't know if that's what the jury did, but it could have been what the jury did is split it or it could have really thought that these were the same damages or they could have thought that Sunline really did have trade secrets despite all the evidence to the contrary. I think the result would be that alternatively what we've argued is that there should be a new trial on that issue. But the jury instruction was if you find Mr. Borden breached his duty of loyalty by competing with his employer during the term of his employment, then you may award Arnold's and Sunline damages in amount that will reasonably compensate Arnold's and Sunline for all financial losses they suffered as a result of Mr. Borden's breach. And didn't that suggest to the jury that they could having concluded that there was a breach misappropriation from an employer, whichever employer it was, that they could then award damages to both entities? Well, the verdict sheet separated out Arnold's and Sunline for the trade secrets claim and then from then on for the breach of contract and the breach of fiduciary duty claims, they were jointly together because of this confusion about who was actually his employer. But to say that the breach of loyalty language that you just quoted Judge Krause somehow affects how the jury should have addressed a trade secret claim when those were specifically delineated. I don't think you can make that comparison for the same reason that someone can be employed by a company and that company doesn't have trade secrets. You could have a popsicle stand that I start tomorrow without where I don't have any trade secrets. So a trade secret verdict is different from a breach of loyalty or fiduciary duty or breach of contract claim where maybe there was some question where the jury could find either of those were the employer and that was sufficient. Was there a separate instruction on damages for misappropriation? They were separated out on the verdict sheet and I believe that the, I don't quite remember, but I believe that the instructions when the judge was talking through them said, decide how much you award Arnold's, decide how much you award Sunline. It sounds like you're making an argument though that would be most relevant if we only had Sunline in the case. And I feel like what I understand opposing counsel be saying is that the verdict was against both entities. And so then the only remaining question is if the entities together are due five hundred seven thousand dollars in damages, according to the jury, whether there's somehow a problem for the jury to just decide to give it to only the parent company or the parent of the subsidiary. On what are you basing your argument that there had to be a direct one-to-one match with the jury splitting it up and only giving the trade secrets to precisely the entity that had the trade secrets if the entities are sort of blended and in a lot of ways overlapping with each other? Sure. I think what the plaintiffs are asking for is basically for this court to modify the jury verdict by switching the amount that was awarded up to Sunline to Arnold's and making it five hundred thousand. Are you saying that Sunline is not owned by Arnold's? No, I'm not saying that. Okay. So then what's the meaningful legal distinction between giving all five hundred thousand dollars in name to Arnold's or giving 250 to Arnold's and 250 to Sunline? Isn't it essentially all going to the same place? In terms of fungible money, yes. In terms of what the jury was actually asked to do and it was assuming that we actually are prescribing meaning to what the jury instructions were in the verdict form was, the jury made the choice, incorrectly in my view, to divide that up. Do you believe that there'd be a legal and factual basis to challenge the total of five hundred thousand dollars if it had been awarded just to Arnold's Furniture? And they had put zero in Sunline's verdict? Or they had just given it to Arnold's Furniture. I think it would be a much harder case for us and we wouldn't, we, I don't know if I would have specific arguments on that. Probably it would be a much harder case. All right. Thank you very much, Ms. Mintz. Thank you, Mr. Smiley. The court will take the matter under advisement.